UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CYNTHIA F. CARPIO,

                                        Plaintiff,

v.

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

                                        Defendant.

Case No.:  20-CV-423-WVG

**ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND
DEFENDANT'S CROSS MOTION
FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

On July 26, 2016, Cynthia F. Carpio ("Plaintiff") applied for disability benefits pursuant to the Social Security Act. (Administrative Record "AR" 45.) Andrew Saul, Commissioner of Social Security, ("Commissioner" or "Defendant") twice denied Plaintiff's application, most recently on February 8, 2017. (AR 157-161.) On January 9, 2020, the Commissioner's Office of Appellate Operations confirmed and finalized the Commissioner's decision. (AR 1-7.) Having exhausted her administrative remedies, Plaintiff initiated this litigation. Now before the Court are Plaintiff and Defendant's ("Parties") cross-motions for summary judgment. (Doc. Nos. 14; 17.) For the reasons below, the Court DENIES Plaintiff's summary judgment motion and GRANTS

Defendant's summary judgment motion.

## II.   PROCEDURAL HISTORY

On July 26, 2016, Plaintiff filed an application for disability benefits pursuant to the Social Security Act, alleging she could no longer work due to her disabling condition. (AR 45; 227-235.) The Commissioner twice denied Plaintiff's application, initially on September 19, 2016, and upon reconsideration on February 8, 2017. (AR 151-154; 157-161.) On March 29, 2017, Plaintiff requested a de novo administrative hearing on her benefits claim. (AR 162.) On October 19, 2018, the Commissioner granted Plaintiff's request and designated Michael B. Richardson as the presiding administrative law judge ("ALJ Richardson"). (AR 180-202.) On February 7, 2019, ALJ Richardson convened an oral hearing on Plaintiff's matter, for which Plaintiff, her attorneys, and John J. Komar, a neutral vocational expert, appeared. (AR 80-119.)

On February 21, 2019, ALJ Richardson issued his Notice of Decision, which was unfavorable to Plaintiff. (AR 45-60.) On January 9, 2020, the Commissioner's Office of Appellate Operations issued its Notice of Appeals Council Action, denying Plaintiff's request for review and finalizing ALJ Richardson's decision. (AR 1-7.) In doing so, the Commissioner explained it examined the additional evidence Plaintiff submitted after her administrative hearing, namely medical records from Imperial County Behavioral Health from January 2, 2019 through February 20, 2019 and Clinicas de Salud Del Pueblo-Brawley from March 24, 2019 through July 12, 2019. (AR 2.) The Commissioner found the supplemental documentation irrelevant because it "d[id] not relate to the period at issue." (*Id.*) On such basis, the Commissioner determined "the reasons do not provide a basis for changing the Administrative Law Judge's decision" and thus confirmed the Commissioner's decision. (AR 1.) This litigation resulted.

On March 5, 2020, Plaintiff filed a complaint seeking judicial review of the Commissioner's denial of disability benefits.  (Doc. No. 1.)  On November 20, 2020, Plaintiff filed a motion for summary judgment. (Doc. No. 14.) On February 25, 2021, the Commissioner filed a cross-motion for summary judgment. (Doc. No. 17.) On March 24,

2021, Plaintiff filed a reply in support of her motion for summary judgment. (Doc. No. 18.) The Parties' respective submissions are ripe for this Court's adjudication.

### III.    FACTUAL BACKGROUND

#### a.  Plaintiff's Medical Condition and History

Plaintiff is 43 years old and alleges she is unable to work due to her disabling condition consisting of chronic back pain, reading and writing difficulties, being a slow learner, and depression. (AR 120; 483; 487). Plaintiff began working in 1998 at a daycare. (AR 487.) Thereafter, between 2002 and 2012, Plaintiff worked intermittently as an in-home care giver to her grandmother. (*Id*.) In that role, Plaintiff cooked for, bathed, and assisted her grandmother with moving in and out of bed and walking. (*Id*.) Plaintiff also helped maintain her grandmother's household by cleaning, laundering clothing, and shopping for her grandmother. (*Id*.) During her administrative hearing, Plaintiff testified she does not believe she is able to perform any of the functions of her prior work due to chronic back and leg pain. (AR 94; 99-101.) Plaintiff has not worked in any capacity since ceasing care to her grandmother.

#### b.  Plaintiff's Psychological Evaluations[1]

#### i.  Dr. Colonna's Evaluation

On August 29, 2016, clinical psychologist, Dr. Rosa Colonna, evaluated Plaintiff's mental health and made findings that were largely unremarkable. (AR 486-490.) Generally, Dr. Colonna observed Plaintiff was "adequately dressed and groomed and not malodorous," with a "normal" posture and gait, and a "flat" affect. (AR 486.) Dr. Colonna also noted Plaintiff's medical history was "significant for depression." (AR 487.) During her appointment, Plaintiff reported to Dr. Colonna "she takes medication for depression and her back, which are both helpful to her." (*Id*.) Plaintiff also disclosed she suffers from

---

[1] Plaintiff does not contest ALJ Richardson's assessment of her physical Residual Functional Capacity ("RFC"). (Doc. No. 14, 12:26.) Accordingly, for purposes of this Order, the Court concerns itself only with ALJ Richardson's findings as to Plaintiff's mental health.

1    a history abusing drugs including methamphetamine and that she relapsed in January 2016.
2    (AR 487.)

3        Dr. Colonna also surveyed Plaintiff's current level of functioning, reporting Plaintiff
4    is financially dependent upon welfare and "able to dress, bathe, shop, and do household
5    chores." (AR 488.) Plaintiff further shared "she takes public transportation" and "mainly
6    will stay at home, clean, watch television, and cook." (*Id*.) As to Plaintiff's attitude and
7    behavior, Dr. Colonna opined Plaintiff is "superficially pleasant" with a "normal" response
8    time and work pace. (*Id*.) Dr. Colonna additionally observed Plaintiff "is oriented to person,
9    time, place, and purpose of the examination," has "clear" speech, and organizes her
10   thoughts in a "linear manner." (*Id*.) Further, Plaintiff's "psychomotor slowing [was] not
11   evident" and her "current intellectual functioning is in the borderline range." (*Id*.) Dr.
12   Colonna characterized Plaintiff's mood as "dysthymic," her affect as "constricted," and
13   that Plaintiff did not exhibit delusions, hallucinations, bizarreness, confusion, or any
14   psychotic indicators. (*Id*.)

15       During her assessment of Plaintiff, Dr. Colonna noted some moderate
16   diminishments, namely in Plaintiff's memory and her attention and concentration span.
17   (AR 488.) Dr. Colonna added Plaintiff's "fund of knowledge is poor" and placed Plaintiff's
18   reading skills at a fifth-grade level and her spelling and arithmetic skills at a third-grade
19   level. (AR 488-489.) Concurrently, Dr. Colonna observed Plaintiff's "insight and judgment
20   are grossly age appropriate" and Plaintiff "was able to respond appropriately to imaginary
21   situations requiring social judgment and knowledge of the norms." (*Id*.) Ultimately, Dr.
22   Colonna found Plaintiff's "overall cognitive ability falls within the borderline range." (*Id*.)
23   Dr. Colonna elaborated Plaintiff "would be able to understand, remember, and carry out
24   short, simplistic instructions without difficulty," "presents with a moderate inability to
25   understand, remember, and carry out detailed instructions," and "would be able to make
26   simplistic work-related decisions without special supervision." (*Id*.) Finally, Dr. Colonna
27   determined Plaintiff "is essentially socially appropriate" with a "mild inability" to interact
28   with others. (AR 490.) Dr. Colonna recommended Plaintiff adhere to a sober lifestyle,

comply with her medications, and undergo psychotherapy. (*Id*.)

## ii.  Dr. Adamo's Evaluation

On September 13, 2016, Dr. Evelyn F. Adamo evaluated Plaintiff's mental health by reviewing medical and non-medical evidence in Plaintiff's records and considering Plaintiff's own representations. (AR 125.) Dr. Adamo found Plaintiff suffered from borderline intellectual functioning, substance addiction, and personality and affective disorders. (AR 126.) In so opining, Dr. Adamo noted she could not substantiate Plaintiff's statements about her own limitations through any objective medical evidence. (AR 127.) Dr. Adamo added Plaintiff's assertions regarding her symptoms were only "partially consistent" with medical and non-medical evidence in Plaintiff's file. (*Id*.) Dr. Adamo then delineated the nature of Plaintiff's limitations, principally finding Plaintiff was "not significantly" limited in her ability to:

- Remember locations and work-like procedures
- Understand, remember, and carry out very short and simple instructions
- Perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances
- Sustain an ordinary routine without special supervision
- Make simple work-related decisions
- Ask simple questions or request assistance
- Get along with coworkers or peers without distracting them or exhibiting behavioral extremes
- Maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, elaborating Plaintiff "is able to interact with others in a workplace on a brief, superficial level"
- Be aware of normal hazards and take appropriate precautions
- Travel to unfamiliar places or use public transportation. (AR 128-130.)

/ / /

Concurrently, Dr. Adamo found Plaintiff was "moderately limited" in her ability to:

- Understand, remember, and carry out detailed instructions

- Maintain attention and concentration for extended periods

- Work in coordination with others without being distracted by them

- Complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, elaborating Plaintiff "retains the capacity of sustain simple repetitive work at an acceptable pace"

- Interact appropriately with the public

- Accept instructions and respond appropriately to criticism from supervisors

- Respond appropriately to changes in the work setting

- Set realistic goals or make plans independently of others, elaborating Plaintiff "is able to copy with normal work changes in a non-demanding work environment." (*Id.*)

Based on her assessment of the totality of these factors, Dr. Adamo determined Plaintiff has moderate limitations in (1) restriction of activities of daily living; (2) social functioning; and (3) concentration, persistence, or pace. (AR 126.) In so concluding, Dr. Adamo determined Plaintiff did not qualify as disabled. (AR 131.) Dr. Adamo explained Plaintiff's "condition results in some limitations in [her] ability to perform work related activities but does not prevent [her] from working" and that Plaintiff's "condition is not severe enough to keep [her] from working." (*Id.*) Dr. Adamo emphasized she considered "the medical and other information and work experience in determining how [her] conditions affects [her] ability to work." (*Id.*)

### iii.  Dr. Blusiewicz's Evaluation

On February 7, 2017, Dr. Catherine Blusiewicz conducted a consultative examination of Plaintiff's mental health. Dr. Blusiewicz noted Plaintiff suffered from borderline intellectual functioning, substance addiction, and personality and affective

disorders. (AR 141.) In doing so, Dr. Blusiewicz determined Plaintiff had moderate limitations as to her ability to (1) understand, remember, or apply information; (2) concentrate, persist, or maintain pace; and (3) adapt or manage herself. (AR 142.) Dr. Blusiewicz added Plaintiff exhibited a mild limitation in interacting with others. (*Id*.) Overall, however, Dr. Blusiewicz's findings were unremarkable: Plaintiff "can understand and carry out both simple and low-level detailed tasks for two-hour period during a normal workday," "complete a normal work day and week without excessive interference from psychological symptoms," "accept supervision and interact with coworkers and the public," and "adapt to change and avoid hazards." (AR 147.)

### c.  Vocational Expert's Testimony

During Plaintiff's February 7, 2019 administrative hearing, John J. Komar testified as the neutral vocational expert in the matter. ALJ Richardson conducted Mr. Komar's examination, setting forth Plaintiff's restrictions and posing a series of hypotheticals to assess in what capacity, if any, Plaintiff could work. (AR 105.) In relevant part, Mr. Komar testified Plaintiff's Residual Functional Capacity ("RFC") permitted Plaintiff to work as a collator operator, a photocopying machine operator, and an advertising material distributor. (AR 109.) Mr. Komar elaborated that, respectively, there were 14,700 collator operator jobs, 17,000 photocopying machine operator jobs, and 41,200 advertising material distributor jobs available in the national economy. (AR 107-109; 112.)

### d.  ALJ Richardson's February 21, 2019 Decision

On February 21, 2019, ALJ Richardson issued his Notice of Decision, denying Plaintiff's benefits claim after finding she was not disabled within the meaning of section 1614(a)(3) (A) of the Social Security Act to qualify for benefits. (AR 48.) ALJ Richardson based his conclusion on ten findings of fact:

(1) **Plaintiff had not engaged in substantial gainful activity since July 26, 2016, the date of her application for disability benefits**, citing to 20 C.F.R. 416.971, *et seq*. (AR 50);

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(2) **Plaintiff had severe impairments consisting of personality disorder; borderline intellectual functioning; major depressive order; methamphetamine dependence; alcohol abuse; and degenerative disc disease of the lumbar spine with right-sided sciatica**, citing to 20 C.F.R. 416.920(c). (AR 50.) ALJ Richardson explained "[Plaintiff's] medically determinable impairments of hypertension, mild asthma, a uterine fibroid, and obesity cause only slight abnormalities that would have no more than a minimal effect on her ability to work." (AR 50.) ALJ Richardson otherwise found Plaintiff's medical condition inconsequential under the objective record[2].

(3) **Plaintiff did not have any impairments that meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404(P), Appendix 1**, citing to 20 C.F.R. 416.920(d), 416.925, and 416.926. (AR 51.) ALJ Richardson noted he "considered all listings" with special attention to those implicating compromised nerve roots and spinal cord. (*Id.*) He found no evidence to support the existence of any physical impairments. (*Id.*) ALJ Richardson continued "the severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet

---

[2] The ALJ noted Plaintiff's hypertension stabilized on October 20, 2017, and did not require aggressive treatment; Plaintiff was conservatively treated for asthma and her uterine fibroid; and Plaintiff's obesity did not significantly limit her ability to do basic work activities. (AR 50-51.) Equally important, the ALJ observed, "there is no objective documentation to confirm the existence of [left shoulder pain, bilateral hip pain, seizures, or a sinus headache] lasting the requisite time period" and cited to "normal" and "unremarkable" physical examination results, such as June 2, 2016 imaging of Plaintiff's left shoulder; June 2, 2016 X-rays of Plaintiff's bilateral hips; March 22, 2016 MRIs of Plaintiff's bilateral hips; December 21, 2017 unsubstantiated self-reporting of a headache and pain behind the left eye; and (4) April 29, 2017 workup records that were "non-diagnostic" of a "possible episode of syncope." (AR 51.) Accordingly, the ALJ concluded "[Plaintiff's] complaints of left should[er] pain, bilateral hip pain, seizures, and a sinus headache are non-medically determinable impairments." (*Id.*)

or medically equal the criteria of listings[3]…" (*Id.*) Ultimately, ALJ Richardson concluded Plaintiff failed to exhibit at least two marked limitations or one extreme limitation to satisfy the inquiry under 20 C.F.R. Part 404(P).

(4) **Plaintiff had a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b) except she could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours of an eight-hour work day, and sit for six hours of an eight-hour workday; occasionally push and pull with the right lower extremity; never climb ladders, scaffolds, or ropes, but could occasionally climb ramps and stairs, balance, stoop, kneel, couch, and crawl; understand, remember, and carry out simple, routine, repetitive tasks with breaks every two hours; have no interaction with the general public, but could have occasional work-related, non-personal, non-social interaction with co-workers and supervisors; tolerate only occasional changes in the work setting; and do work requiring no more than a fifth grade reading level and a third grade spelling and arithmetic level.** (AR 52-53.) Under 20 C.F.R. 416.927, ALJ Richardson considered all symptoms, the extent to which these symptoms could reasonably be accepted as consistent with objective medical evidence, and opinion evidence. (AR 53.) ALJ Richardson also accepted Plaintiff displayed impairments that could reasonably be expected to cause Plaintiff to

---

[3] The ALJ elaborated Plaintiff exhibited (1) moderate limitations in understanding, remembering, or applying information as well as concentrating, persisting, or maintaining pace; adapting or managing oneself; and (2) a mild limitation in interacting with others. (*Id.*) The ALJ added Plaintiff generally "exhibited normal findings on mental status examinations, except for some notes of poor judgment" and "reported improvement in her mood with proper medication management and compliance." (*Id.*) Concurrently, the ALJ considered Plaintiff self-reporting "up and down mood, some non-command voices, and being more upset and sad[der]" and that she exhibited "some abnormal findings on mental status examination during the psychological consultative examination such as flat affect; a dysthymic mood and constricted affect; moderately diminished attention span, concentration, and memory; and a poor fund of knowledge." (*Id.*)

1   experience pain. (*Id.*)  For this reason, ALJ Richardson accounted for additional

2   evidence indicating the degree to which Plaintiff could perform work-related

3   activities, encompassing the intensity, persistence, and limiting effects of Plaintiff's

4   symptoms.[4] (*Id.*) However, in reviewing the entirety of the record, ALJ Richardson

5   identified inconsistencies between Plaintiff's testimony regarding her physical[5] and

6   mental[6] condition and the objective medical evidence. (AR 53-55.)

7

8   _____

9   [4] This additional evidence included contextual information regarding Plaintiff's age and

10  her 12th grade education level; Plaintiff's testimony regarding January 1, 2010 as the
    alleged disability onset date and that she cannot work due to back pain radiating to her right

11  leg, her inability to lift more than 10 pounds, and difficulty following instructions and
    managing her stress; and an August 7, 2016 function report consisting of Plaintiff's self-

12  reported issues. (AR 54.)

13  [5] The inconsistencies regarding Plaintiff's physical condition included, but were not limited
    to: treatment records indicating the onset of any disabling condition Plaintiff experienced

14  was on August 12, 2015 and not on January 1, 2010, as Plaintiff reported; a normal

15  February 11, 2016 x-ray of Plaintiff's lumbar spine and a February 27, 2017 follow-up x-
    ray that refuted Plaintiff's allegations of disabling back pain; records from Plaintiff's May

16  31, 2016 visit to the emergency room after "running out of medications" for back pain,
    where Plaintiff "was constantly asking when she would be discharged and [stating] she did

17  not want further workup;" records indicating Plaintiff was recommended for only

18  conservative treatment for her alleged back pain and Plaintiff's personal use of a cane "is
    not medically necessary for ambulation;" other records in which Plaintiff "acknowledged

19  she has no problems with personal care; is able to cook, clean, care for, and wash clothes
    for her children; care for her pets; prepare her own meals; perform household chores," etc.;

20  her admissions on November 28, 2018 that her pain medications "provide[d] over 50

21  percent relief" and she could "perform her activities of daily living independently."

22  [6] The inconsistencies regarding Plaintiff's mental condition included, but were not limited
    to: alleging a disabling mental condition as early as 2010 but declining a referral for mental

23  health treatment provided by Plaintiff's primary care provider, Dr. Nona M. Girardi, on

24  February 29, 2016; August 3, 2016 psychiatric progress notes indicating Plaintiff's mental
    status examination showed she "had fair hygiene, no motor agitation or retardation, normal

25  speech, appropriate affect, no suicidal ideation, goal-directed thought process, no delusions

26  or perceptual disturbances, ok insight and judgment, and [Plaintiff] report[ing] her mood
    was alright" despite that, during the same appointment, Plaintiff reported "she was drinking

27  more, had difficulty sleeping, and was hearing non-command voices;" on December 13,

28  2017, Plaintiff "exhibited normal findings on a mental status examination" but self-

(5) **Plaintiff has no past relevant work**, citing to 20 C.F.R. 416.965 (AR 59);

(6) **Plaintiff was born on December 6, 1977 and was 38 years old, which is defined as a younger individual age 18 – 49, on the date the application was filed**, citing to 20 C.F.R. 416.963 (AR 59);

(7) **Plaintiff has at least a high school education and is able to communicate in English**, citing to 20 C.F.R. 416.964 (AR 59);

(8) **Transferability of job skills is not an issue because Plaintiff lacks past relevant work**, citing to 20 C.F.R. 416.968 (AR 59);

(9) **Given her age, education, work experience, and residual functional capacity, Plaintiff is able to perform certain jobs that exist in significant numbers in the national economy**, citing 20 C.F.R. 416.969 and 416.969(a) (AR 59). ALJ Richardson cited to the vocational expert's testimony that, given Plaintiff's limitations, she could still work as a collator operator, photocopying machine operators, or an advertising material distributor. (AR 59-60.) Based on such testimony, ALJ Richardson opined Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 60.) From there, ALJ Richardson concluded "a finding of 'not disabled' is therefore appropriate…" (*Id*.); and

(10)     **Plaintiff has not been under a disability, as defined in the Social Security Act, since July 26, 2016, the date the application was filed**, citing to 20 C.F.R. 416.920(g) (AR 60).

## IV.   LEGAL STANDARD

Section 405(g) of the Social Security Act authorizes unsuccessful disability benefits applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited, as the Commissioner's denial of

reported as "being more upset, sad, and angry for no reason," an inconsistency which resurfaced in 2018 and 2019.

benefits "will be disturbed only if it not supported by substantial evidence or is based on legal error." *Brawner v. Sec'y of Health and Human Servs.*, 830 F.2d 432, 433 (9th Cir. 1988); *Sandgather v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (substantial evidence is "more than a mere scintilla" but less than a preponderance). At all times, the court must consider the record in its totality, weighing evidence that both supports and weakens the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). Where the ALJ failed to apply the proper legal standards in reaching his decision, the court must set aside the ALJ's decision. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). However, where the evidence supports more than one rational interpretation, the court must uphold ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Deference, under such circumstances, is required rather than permissive. *Bayliss*, 427 F.3d at 1214 n.1; *Sandqathe*, 108 F.3d at 980.

## V.    DISCUSSION

### a.   Substantial Evidence Supports ALJ Richardson's RFC Finding

Plaintiff disputes ALJ Richardson's RFC determination and his underlying finding that Plaintiff's mental health does not preclude her from working in some capacity. Plaintiff points to three perceived oversights in ALJ Richardson's Notice of Decision, namely (1) excluding the word "short" in referring to Dr. Colonna's findings that Plaintiff was limited to comprehending "short, simplistic instructions;" (2) failing to account for Dr. Adamo's determination that Plaintiff can only tolerate "brief, superficial interactions" in a non-demanding work environment;  and (3) assigning only "some" weight to Dr. Blusiewicz's opinion that Plaintiff is limited to carrying out "simple and low-level detailed tasks." Defendant counters Plaintiff was not harmed by any of the three instances because ALJ Richardson found Plaintiff more limited than the three psychologists opined. The Court agrees with Defendant and finds substantial evidence underlies ALJ Richardson's RFC determination.

In his Notice of Decision, ALJ Richardson averred he considered all of Plaintiff's symptoms, the objective medical evidence, and opinion evidence in determining Plaintiff's

20-CV-423-WVG

1   RFC. (AR 53.) Further, ALJ Richardson accounted for contextual information including
2   Plaintiff's age, education level, and own testimony regarding her limitations such as her
3   difficulty following instructions and managing stress. (*Id*.) In considering these varying
4   sources of information, ALJ Richardson identified a slew of inconsistencies between
5   Plaintiff's testimony regarding her mental health and the objective evidence. (AR 53-55.)
6   ALJ Richardson itemized these inconsistencies his Notice of Decision. The inconsistencies
7   implicated information as elementary as the onset date of Plaintiff's disabling mental
8   condition and reflected that Plaintiff's self-reported disruptions to her sleep and mood
9   between 2016 and 2019 could not be substantiated through the objective medical evidence.
10  (AR 53-55.) *See Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992) (an applicant
11  seeking benefits under the Social Security Act must show she suffers an impairment
12  resulting from "anatomical, physiological, or psychological abnormalities that are
13  demonstrable by medically acceptable clinical and laboratory diagnostic techniques").

14      Given ALJ Richardson's extensive consideration of the record, substantial evidence
15  supports his RFC determination. Throughout his Notice of Decision, ALJ Richardson cited
16  with specificity to objective evidence, opinion evidence, and Plaintiff's own admissions,
17  to explain his findings of credibility and the weight he placed upon the varying sources of
18  information. *Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020) (finding substantial
19  evidence supported ALJ's denial of disability benefits given objective evidence that
20  conflicted with claimant's purported inability to work, such as claimant's positive response
21  to treatment and lengthy gaps in treatment suggesting his impairments were not as limited
22  as he testified); *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008)
23  (upholding ALJ's adverse credibility determination because "[t]he record reflects that
24  claimant has normal activities of daily living, including cooking, house cleaning, doing
25  laundry, and helping her husband in managing finances"); *Bray v. Comm'r of Soc. Sec.*
26  *Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

27      Relatedly, the Court strains to find error in any of the three grievances Plaintiff raises
28  about ALJ Richardson's Notice of Decision, particularly when considering the absence of

20-CV-423-WVG

controlling authority supporting Plaintiff's arguments. Regarding ALJ Richardson's omission of the term "short" from Dr. Colonna's determination that Plaintiff was limited to comprehending "short, simplistic instructions," ALJ more than adequately captured the limitation in his Notice of Decision. In his Decision, ALJ Richardson makes clear he "considered and gives significant weight to the opinion of Dr. Colonna, who opined the claimant can understand, remember, and carry out short, simplistic instructions…" (AR 57.) Given ALJ Richardson placed "significant weight" on Dr. Colonna's opinion and found Plaintiff even more limited than Dr. Colonna, Plaintiff fails to demonstrate what harm she suffered here. The authority Plaintiff cites to is not analogous and does nothing to advance Plaintiff's claim of harm[7].

Further, just as he found Plaintiff more limited than Dr. Colonna opined, ALJ Richardson found Plaintiff more limited than Drs. Adamo and Blusiewicz opined. Under such circumstances, the Court concludes Plaintiff suffered no harm from ALJ Richardson's omission of Dr. Adamo's specific determination that Plaintiff can only tolerate "brief, superficial interactions" in a non-demanding work environment and his assignment of only "some" weight to Dr. Blusiewicz's opinion that Plaintiff is limited to carrying out "simple and low-level detailed tasks." Ninth Circuit precedent informs the Court's decision in cases like Plaintiff's here, where substantial evidence supports an ALJ's denial of benefits even

_____

[7] For example, *Brown-Hunter* is not relevant. There, the court found the ALJ erred by making conclusory statements "based on unspecified claimant testimony and a summary of medical evidence that the 'functional limitations from the claimant's impairments were less serious than she has alleged.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). In contrast here, ALJ Richardson's Notice of Decision is replete with evidence-specific determinations tied to testimony from Plaintiff, the medical record, and multiple physicians' opinions. Separately, *Vincent* only bolsters the Commissioner's position that the "ALJ need not discuss all evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). Further, *Vincent* is not analogous because ALJ Richardson certainly did not "reject significant probative evidence" by placing significant weight on Dr. Colonna's opinion and finding Plaintiff more limited than Dr. Colonna did. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (commenting the ALJ must explain "why significant probative evidence has been rejected").

when the ALJ finds a claimant is more limited than as reported by opining physicians. *Hubbard v. Astrue*, 371 F. App'x 785, 787 (9th Cir. 2010) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir.1995) (upholding "ALJ's decision where the evidence is susceptible to more than one rational interpretation when the ALJ "found [claimant's] abilities were more limited than some other doctors opined"); *St. Clair v. Saul*, 776 F. App'x 447, (Mem)–448 (9th Cir. 2019); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (holding an ALJ is "not required to provide reasons for assigning only 'some weight' to their opinions" in instances where the ALJ finds the claimant more limited than the medical opinions at issue"); *Watson v. Barnhart*, 126 F. App'x 788, 789 (9th Cir. 2005) (finding ALJ's decision was supported by substantial evidence and did not abuse his discretion in denying cross-examination after "expressly disclaim[ing] reliance on [a] contested report and rel[ying] instead on the overall record and medical evidence").

**b. Substantial Evidence Supports ALJ Richardson's Determination that Plaintiff Could Perform Work in the National Economy**

Plaintiff disputes ALJ Richardson's finding that she could perform other work available in the national economy and aims to discredit the vocational expert's testimony on the matter. In support of her position, Plaintiff points to perceived procedural and substantive defects in the ALJ's determination. Procedurally, Plaintiff argues "no evidence of the vocational expert's methodology exists in this record" and, thus, the ALJ's reliance on vocational expert testimony was improper. (Doc. No. 14., 18:4-5.) Substantively, Plaintiff argues no substantial evidence exists to support ALJ Richardson's finding that Plaintiff could perform any work in the national economy. (Doc. No. 14, 20:1-2; 21:15-16; 22:12-13; 23:11-12; 24:1-3.) The Commissioner rejects Plaintiff's arguments, posing that Plaintiff is not a vocational expert herself and that she forfeited the matter when she failed to object to the vocational expert testimony before ALJ Richardson. The Court agrees with the Commissioner. Moreover, even if Plaintiff had not forfeited the issue at the administrative level, the Court finds Plaintiff's arguments here are unconvincing.

/ / /

The Court first addresses the matter of forfeiture. Controlling Ninth Circuit precedent establishes "appellants must raise issues at their administrative hearings in order to preserve them on appeal before this Court." See *Avol v. Secretary of Health & Human Serv.*, 883 F.2d 659, 660 (9th Cir. 1989). *Meanel* narrowed this proposition of law, "hold[ing] that, at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (finding claimant forfeited her appeal concerning new job statistics she failed to first raise before the ALJ and rejecting her argument that it would be unfair to do so particularly where "she was represented by counsel who knew that all relevant evidence should have been brought to the ALJ's attention"). Since then, Ninth Circuit case law remains consistent in holding that represented claimants must raise objections before the ALJ to preserve them on appeal. *Shapiro v. Saul*, 833 F. App'x 695, 696 (9th Cir. 2021) ("because she was represented and did not challenge the [vocational expert's] job numbers during the hearing before the ALJ, Shapiro forfeits such a challenge on appeal"); *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) ("we now hold that when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel").

Despite Plaintiff's silence on the matter, it is apparent from the Court's review of the record of the proceedings before ALJ Richardson that Plaintiff failed to object to the vocational expert's testimony by introducing job statistics of her own. Given Plaintiff was represented by counsel at her administrative hearing before ALJ Richardson, Ninth Circuit precedent requires this Court to find that Plaintiff forfeited the matter on appeal. Plaintiff's citation to *Erickson* is unavailing because the facts of that case starkly contrast the circumstances here. In *Erickson*, the Ninth Circuit noted "Erickson properly challenged the accuracy of the vocational expert's jobs numbers by submitting a post-hearing supplemental brief with accompanying exhibits" to the ALJ. *Erickson v. Saul*, 840 F. App'x 167, 168 (9th Cir. 2021). The same cannot be said here because Plaintiff did not raise any

1    of her existing vocational statistics objections to ALJ Richardson. Finally, Plaintiff's

2    citation to *Jaquez*, inviting the Court to ignore Plaintiff's failure to raise vocational

3    objections before ALJ Richardson, is not persuasive. *Jaquez* is a stand-alone decision set

4    to the backdrop of longstanding, controlling authority and the Ninth's Circuit's admonition

5    that "this disposition is not appropriate for publication and is not precedent except as

6    provided by Ninth Circuit Rule 36-3." *Jaquez v. Saul*, 840 F. App'x 246, 247 (9th Cir.

7    2021). The Court finds Plaintiff forfeited this issue when she failed to raise it before ALJ

8    Richardson at her administrative hearing.

9         Separately, even if Plaintiff had not forfeited this issue, the Court finds ALJ

10   Richardson's determination that Plaintiff could work within the national economy is

11   substantially supported by the record and, more specifically, by the vocational expert's

12   testimony. It is well established "a vocational expert's recognized expertise provides the

13   necessary foundation for his or her testimony" and, therefore, "no additional foundation is

14   required." *Diez v. Berryhill*, 2019 WL 3928778, at *6 (S.D. Cal. Aug. 19, 2019) (citing

15   *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2005)). Ninth Circuit precedent is

16   similarly unequivocal that, "in the absence of any contrary evidence, a [vocational expert's]

17   testimony is one type of job information that is regarded as inherently reliable; thus, there

18   is no need for an ALJ to assess its reliability." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th

19   Cir. 2017). To this end, the Commissioner can meet its burden to show there exists work

20   in significant numbers in the national economy that comply with a plaintiff's restrictions

21   based upon the inherent reliability of the vocational expert's testimony. *Ford v. Saul*, 950

22   F.3d 1141, 1159–60 (9th Cir. 2020) (citing *Barker v. Sec'y of Health and Human Servs.*,

23   882 F.2d 1474, 1479–80 (9th Cir. 1989)). The Ninth Circuit's "review of an ALJ's fact-

24   finding for substantial evidence is deferential," where the threshold for substantial evidence

25   is "more than a mere scintilla" such that a "reasonable mind might accept as adequate to

26   support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1157; 1159–60 (9th Cir. 2020).

27        In itself, the vocational expert's testimony readily clears the low substantial evidence

28   bar. As a threshold matter, the vocational expert testified to the veracity of his resume and

1  that his certifications were current at the time of Plaintiff's administrative hearing. (AR

2  105.) At no time during the administrative hearing did Plaintiff object to the vocational

3  expert's qualifications. See *Papin v. Barnhart*, 221 Fed.Appx. 540, 541 (9th Cir. 2007)

4  (noting plaintiff "stipulated to the vocational expert's qualifications" in rejecting plaintiff's

5  "conclusory assertions that the vocational expert's testimony was not grounded in any

6  scientific principles or methodology"). Therefore, as a foundational matter, there can be no

7  dispute over the vocational expert's qualifications to testify at the administrative hearing

8  in his professional capacity.

9        Further, "for the vocational expert's testimony to constitute substantial evidence, the

10 ALJ must pose a hypothetical based on medical assumptions supported by substantial

11 evidence in the record reflecting each of the claimant's limitations," where the

12 hypotheticals are "accurate, detailed, and supported by the medical record." *Andrews v.*

13 *Shalal*, 53 F.3d 1035, 1044 (9th Cir.1995); *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th

14 Cir.1999). Here, ALJ Richardson appropriately questioned the vocational expert regarding

15 what jobs, if any, exist in the national economy for an individual with Plaintiff's age,

16 education, work experience, and RFC in light of the Medical-Vocational Guidelines. In

17 doing so, ALJ Richardson delineated Plaintiff's limitations with specificity and

18 consistency with Plaintiff's medical record and posed a series of hypotheticals to the

19 vocational expert that accounted for those limitations. (AR 106-107.) In turn, the vocational

20 expert considered each of these factors and provided a limited list of such jobs that

21 complied with Plaintiff's restrictions, namely a collator operator, photocopying machine

22 operators, or an advertising material distributor. (AR 59-60.) In doing so, the vocational

23 expert cited to the Dictionary of Occupational Titles ("DOT"), wherever applicable,

24 explained the level of sedentary exertion each position required, and set forth the number

25 of jobs available in the national economy for each line of work. For these collective

26 reasons, the Court finds ALJ Richardson's reliance on the vocational expert's testimony

27

28

1    was supported by substantial evidence in the record[8].

2         Plaintiff's argument that the vocational expert's methodology was faulty falls flat

3    considering Plaintiff offers no legal authority that in fact supports her position. Indeed,

4    none of the case law Plaintiff cites comes to her aid, as the Eleventh Circuit's 2020 *Goode*

5    case is not binding upon this Court and the Ninth Circuit's 2020 *Ford* case favors finding

6    for the Commissioner on this issue. *Ford*, 950 F.3d at 1159-1160 (holding, in part, the

7    vocational expert's failure to produce underlying data did not undermine the testimony's

8    reliability); *see generally Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020).

9    Notably, despite disagreeing with the vocational expert's testimony, Plaintiff does not

10   presently argue and did not argue during the administrative hearing that the vocational

11   expert's testimony is in "obvious or apparent" conflict with estimates provided in the DOT

12   or contradicts the Medical-Vocational Guidelines. *Swenson v. Sullivan*, 876 F.2d 683, 689

13   (9th Cir. 1989); *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017). For this reason,

14   ALJ Richardson was not obligated to "*sua sponte* investigate and resolve [any perceived]

15   conflict." *Ford*, 950 F.3d at 1159. Moreover, the vocational expert was not obligated to set

16   forth his methodology, and his credibility did not hinge upon his testimony as to his

17   methodology. *Biestek v. Berryhill*, 139 S. Ct. 1140, 1155-1156 (2019) ("a vocational

18   expert's testimony may count as substantial evidence even when unaccompanied by

19   supporting data").

_____

[8] The Court is not persuaded by Plaintiff's argument that ALJ Richardson's decision is improper because ALJ Richardson failed to address Plaintiff's reading or writing abilities with the vocational expert. ALJ Richardson's Notice of Decision articulates the vocational expert's testimony that the Dictionary of Occupational Titles does not address reading, spelling, and arithmetic levels and, for this reason, the vocational expert testified as to literacy limitations based on information available to him, namely his professional experience. (AR 60.) The DOT's silence on the matter, coupled with the vocational expert's undisputed qualifications and inherent reliability, dispel any notion that ALJ Richardson unreasonably or insufficiently addressed Plaintiff's literacy limitations with the vocational expert.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VI.   CONCLUSION

For the Foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

DATED:      September 27, 2021

_____
Hon. William V. Gallo
United States Magistrate Judge

20-CV-423-WVG